**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION**

Case No. 0:16-CV-61038-WJZ

**CHG HEALTHCARE SERVICES,
INC.**, a Delaware Corporation,

    Plaintiff,

vs.

**ELIZABETH HALE**, an individual, and
**MEDPARTNERS LOCUM TENENS,
INC.**, a Florida Corporation,

    Defendants.       /

## DEFENDANTS' MOTION TO DISMISS VERIFIED COMPLAINT

Defendants, ELIZABETH HALE ("Hale") and MEDPARTNERS LOCUM TENENS, INC. ("MedPartners") (collectively the "Defendants"), by and through their undersigned counsel, and pursuant to Fed. R. Civ. P. 12(b), hereby move to dismiss Plaintiff, CHG HEALTHCARE SERVICES, INC.'S ("Plaintiff") Verified Complaint (the "Complaint") in its entirety, and in support thereof state as follows:

### Introduction

Plaintiff's Complaint is a blatant attempt at forum shopping. Plaintiff filed the Complaint only one business day after it dismissed an almost identical state court complaint against the Defendants, because the state court judge entered an unfavorable order requiring Plaintiff's then Group President to appear for deposition prior to or to testify at the motion for temporary injunction hearing. The Complaint itself fails as a matter of law because it (1) is insufficiently plead, (2) fails to include an indispensable Florida party, thus destroying complete diversity, and (3) cannot establish that the amount in controversy exceeds $75,000. For these and other

reasons, the Complaint must be dismissed with prejudice.

## Facts

1. <u>Hale's Extensive Healthcare Staffing Experience Prior to Working for Weatherby</u>

Prior to her commencement of employment with Weatherby, Hale had nearly eighteen (18) years of healthcare staffing industry experience, the last eleven (11) of which as either a Division Vice President or Vice President.

| Date | Company | Position(s) |
|---|---|---|
| February, 1992-March, 1994 | Comprehensive Care America (a home healthcare agency) | Nurse Staffing Manager; Director of Quality Systems & Nursing Services (promoted to this position within 9 months) |
| April, 1994-April, 1998 | NI Healthcare Resources (healthcare staffing services) | Market Manager |
| April, 1998-October, 1999 | Ranstad/Office Specialists (clerical staffing services) | Area Director |
| October, 1999-September, 2002 | NI Healthcare Resources (healthcare staffing services) | Vice President |
| September, 2002-September, 2011 | CareerStaff Unlimited, Inc. (healthcare staffing services) | Eastern Division Vice President |
| October, 2011-January, 2016 | Weatherby Healthcare (Plaintiff) (*Locum Tenens* Physician Staffing) | Director/Senior Director |

(*See* Declaration of Elizabeth Hale attached hereto as **Exhibit "A."**)

2. <u>Hale's Employment with Weatherby</u>

Hale was employed by Weatherby Locums, Inc. ("Weatherby"), Plaintiff's subsidiary, as a Director and then Senior Director of Physician Staffing, from October, 2011 until January 8, 2016. D.E. 1 at ¶¶ 3, 23-24. Hale supervised Weatherby employees solely focused on the recruitment and temporary placement of pediatric physicians and physicians in pediatric subspecialties. Hale never worked for the Plaintiff. *Id.* at ¶23.

On February 12, 2015, Hale entered into an Employment Agreement Including

2

Confidentiality, Non-Competition and Non-Solicitation Provisions ("Employment Agreement") with both the Plaintiff and Weatherby[1], which prevented her from, *inter alia*, using any of Plaintiff's confidential business information and which prevented her from disseminating, divulging, transferring or communicating any of Plaintiff's confidential information to any other employee or any other person or entity. *See* D.E. 1, ¶ 28 & D.E. 1-2 (Ex. A to the Complaint). Additionally, the Employment Agreement restricted Hale from working for any entity which competes with the Plaintiff for one year post-termination.

On this same date, Hale entered into two Restricted Unit Award Agreements (collectively the "Award Agreements") with CHG Holdings, L.P. *See* D.E. 1-3 (Exhibit B to the Complaint). The Award Agreements granted Hale Units, but did not vest until February 12, 2016, Hale's first anniversary with Weatherby after the Award Agreements were entered into. *Id.* The Award Agreements included similar non-competition provisions preventing Hale from working for any entity which competes with the Plaintiff for one year. *Id.*

3. Hale's Employment with MedPartners

On January 8, 2016, Hale resigned from Weatherby and eventually went to work for MedPartners. *Id.,* ¶¶ 35-36. The Co-Founder of MedPartners, Jay Mays ("Mays"), left Weatherby in 2012 as a Director to start MedPartners. *Id.*, ¶ 39. Weatherby allowed Mays to open a competing business even though he had a similar non-compete and non-disclosure agreement with Weatherby. *Id. See* Declaration of Jay Mays attached hereto as **Exhibit "B."**

Although MedPartners competes with Weatherby, Hale's position with MedPartners is that of Vice President of Operations. *Id.*, ¶ 36. Importantly, Hale is not working in a sales capacity (as she was at Weatherby) and is not involved in or overseeing MedPartners' Women

---

[1] For purposes of this Motion, Defendants do not contest that Plaintiff has standing to sue Hale for breach of the Employment Agreement, as it is a party to this contract.

3

and Children's Services Team, in either a sales or operational role, which is MedPartners' recruiting division similar to the division she oversaw at Weatherby. *See* Ex. A, ¶¶8-10. Therefore, while it is true that Hale is working for a competitor of Weatherby, she is not actually competing with Weatherby.

In anticipation of hiring Hale, MedPartners sent her a letter directing her not to bring with her any confidential or proprietary information from Weatherby, or information which would be considered a trade secret. This letter also instructed her not to solicit any of Weatherby's clients and employees. *See* Declaration of Jay Mays attached hereto as **Exhibit "B,"** ¶7 & exhibit A. Additionally, on January 25, 2016, MedPartners sent to Weatherby's President a letter providing assurances that Hale was working for MedPartners in a position that was not competitive with her positions when she worked with Weatherby, and that she had been instructed not to copy, retain or utilize any of Weatherby's confidential information or trade secrets, and not to solicit any of Weatherby's clients or personnel, and that she had acknowledged and agreed to abide by these instructions. Ex. B, ¶8 & exhibit B.

4. The State Court Lawsuit

On March 7, 2016, the Plaintiff filed a verified complaint ("State Court Complaint") in the Circuit Court for the 17th Judicial Circuit in and for Broward County, Florida, Case No.: CACE-16-004221 (the "State Court Action"). The verified complaint filed in the State Court Action is nearly identical to the Complaint.[2] A copy of the verified State Court Complaint is attached hereto as **Exhibit "C."** Shortly after the verified State Court Complaint was filed, the Parties exchanged discovery. Additionally, the Plaintiff filed a motion for temporary injunction – which is nearly identical to the Motion for Temporary Injunction which has just been filed in

---

[2] The only substantive difference between the verified Complaint and the verified State Court Complaint is that the Complaint contains a count for "Federal Unfair Competition" under 15 U.S.C. § 1125 (Count VI).

4

this litigation. [D.E. 13]. At a scheduling hearing for the motion for temporary injunction, the judge ordered that David Baldridge, Plaintiff's then Group President, had to appear either for a deposition or as a witness at the hearing on the motion for temporary injunction. Mr. Baldridge had personally spoke to Hale subsequent to her separation with the Plaintiff, discussing Hale's role with MedPartners. Baldrige then sent an e-mail to Plaintiff's President, Bill Heller, regarding this conversation, Hale's non-compete and Hale's role at MedPartners, which Plaintiff produced to Defendants in the State Court Action. A copy of this order is attached hereto as **Exhibit "D."**[3] Two days later, the Plaintiff dismissed the State Court Action.

5. The Current Litigation

The following business day, the Plaintiff filed the above-styled action. The Complaint includes counts against Hale for Breach of Contract (of the Employment Agreement), Breach of Contract (of the Award Agreements), against Hale and MedPartners for Violation of the Florida Uniform Trade Secrets Act, Injunctive Relief, Tortious Interference With Contractual Relationships (against MedPartners), and Federal Unfair Competition against Hale and MedPartners. For the reasons more fully stated below, the Complaint must be dismissed with prejudice.

**Standard of Review**

A motion to dismiss based on Fed. R. Civ. P. 12(b)(1) subject matter jurisdiction may be either facial or factual. *CFTC v. Liberty Mut. Group, Inc.*, 2008 U.S. Dist. LEXIS 484 at *6 (S.D. Fla. 2008). "When adjudicating factual attacks, courts may look at material from outside the four corners of the Complaint insofar as they relate to jurisdictional questions." *Id.* at *7. When a defendant properly challenges the subject matter jurisdiction of the court, the court is

---

[3] Defendants hereby request that the Court take judicial notice of this Order.

"free to independently weigh facts, and may proceed as it never could under 12(b)(6)…." *Int'l Lmps., Inc. v. Int'l Spirits & Wines, LLC*, 2011 U.S. Dist. LEXIS 156203 at *5 (S.D. Fla. 2011).

Courts deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(7) perform a two-step inquiry: first they decide whether the absent party is required in the case under Fed. R. Civ. P. 19. If the person is a required party, then the court must then order that person to be made a party. If the person cannot join as a party, then the court must consider if in equity and in good conscience whether the action should proceed among the existing parties or be dismissed. *Id.* at *6. "When making this decision, courts look at the pleadings and affidavits as well as evidence introduced by the parties. *Id.*

To survive a motion to dismiss based on Fed. R. Civ. P. 12(b)(6), a complaint must contain well-pleaded facts. *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964–65 (U.S. 2007). As stated by the Supreme Court, "while a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels or conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. A complaint only survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Twombly*, 127 S. Ct. at 1966; *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) (affirming Twombly and clarifying stricter pleading requirement that now applies to all civil actions). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference <u>that the defendant is liable for the misconduct alleged</u>." *Iqbal*, 129 S. Ct. at 1949 (holding that the mere possibility of liability is insufficient to survive a motion to dismiss and that the court must determine whether the allegations in the plaintiff's complaint plausibly give rise to an entitlement to relief)(emphasis added).

Case No. 0:16-CV-61038-WJZ

**Argument**

1. <u>Plaintiff's Fail to Demonstrate Damages Which Exceed $75,000.00</u>

The Complaint should be dismissed because this Court lacks jurisdiction under 28 U.S.C. § 1332.  Under 28 U.S.C. § 1332, this court only has original jurisdiction of a civil action if the matter in controversy exceeds $75,000 and is between citizens of different States.  Based on the discovery exchanged in the State Court Action, the Plaintiff cannot demonstrate that it suffered *any* damages, let alone damages which amount to an excess of $75,000.  "In determining whether or not subject matter jurisdiction exists, a court is permitted to investigate widely and has authority to look beyond the pleadings.  A court may review or accept any evidence submitted by the parties." *Scelta v. Delicatessen Support Servs.*, 57 F. Supp. 2d 1327, 1343 (M.D. Fla. 1999); *see Lawrence v. Dunbar*, 919 F. 2d 1525, 1529 (11th Cir. 1990).  Importantly, [t]he burden of establishing subject matter jurisdiction is on the party asserting jurisdiction in federal court." *Scelta*, 57 F. Supp. 2d at 1343.

As noted *infra*, the Plaintiff filed a verified State Court Complaint in the State Court Action.  *See* Ex. C.  The State Court Complaint alleged that Plaintiff had suffered "actual damages flowing from the breach" of the Employment Agreement." *See* Ex. C, ¶55(b).  In their First Request for Production of Documents, Defendants requested documents from Plaintiff showing that it had suffered any damages for breaching the Employment Agreements or the Award Agreements, as alleged in the verified State Court Complaint.  *See* Ex. C, ¶¶ 53-54, 60-62[4]; *see also* Plaintiff's Response to Defendants' Request Nos. 26, 28-29 & 31 to Defendants' First Request for Production of Documents, a copy of which is attached hereto as **Exhibit "E**," pp. 28, 30-31, 33.  Plaintiff provided an identical response to all Defendants' requests, objecting

---

[4] All of the State Court Complaint allegations discussed in this section are also contained in the verified Complaint.

7

because they were "premature as discovery is ongoing." By its responses, Plaintiff admits that it had no evidence to support any damages for breach of the Employment Agreement or the Award Agreements, despite its verified State Court Complaint allegations to the contrary.

The verified State Court Complaint also alleged that "Hale has been unjustly enriched by her unlawful use of CHG's Trade Secrets…" and that Plaintiff suffered "actual damages flowing from Hale's misappropriation of CHG's Trade Secrets." *See* Ex. C, ¶70, 71(c). In its First Request for Production of Documents, Defendants sought documents from Plaintiff to support these allegations and Plaintiff's response was either to object as premature because discovery is ongoing, or to state that they actually **had no documents** to support the verified allegation. *See* Ex. E, pp. 38, 43. (Plaintiff's responses to Request Nos. 36 & 41).

Lastly, the verified State Court Complaint alleged Plaintiff "suffered damages as a result of MedPartners' unjustified interference" and then demanded "actual damages flowing from the tortious interference…" of the Employment Agreement and Award Agreements. *See* Exhibit A, ¶81 & (a) of Wherefore paragraph below ¶81. In its First Request for Production of Documents, Defendants requested that Plaintiff produce documents to support these verified allegations and, again, Plaintiff objected because Defendants' request was somehow premature as discovery was ongoing. *See* Ex. E, p.53 (Plaintiff's response to Request No. 51).

The Plaintiff's Responses to Requests for Production are dated May 2, 2016. As of that date, the Plaintiff was unable to provide a single document which demonstrated that it had suffered any damages as a result of any of its allegations included in Plaintiff's <u>verified</u> State Court Complaint. However, just fourteen (14) days later, the Plaintiff filed an almost identical <u>verified</u> Complaint in the above-styled litigation wherein it now somehow alleges damages in excess of $75,000.

Further proving that the Plaintiff has not suffered damages in excess of $75,000, Plaintiff stated in the verified State Court Complaint that

> [b]y working for or with one of CHG's direct competitors, within days of her resignation from CHG, Hale is able to use the relationships she developed and business strategies she learned at CHG to solicit CHG's customers to work with her at MedPartners, as well as to use CHG's confidential information to solicit CHG's clients and employees, to the unfair advantage of Hale and MedPartners, and to the disadvantage of CHG.

*See* Exhibit A, ¶44. However, based on the discovery exchange in the State Court Action, the Plaintiff was unable to demonstrate that it had *any* evidence demonstrating that Hale solicited, or attempted to solicit, any of the Plaintiff's employees, customers or candidates – which further shows that it has not suffered any damages.[5]

Hale also propounded Request for Admissions upon the Plaintiff in the State Court Action requesting that Plaintiff admit it did not possess any evidence demonstrating that Hale had attempted to solicit or had successfully solicited any current or prospective customers, clients, accounts, candidates or employees. Yet again Plaintiff objected to all such requests on the grounds that the requests were premature and that discovery was ongoing. A copy of Plaintiff's Response is attached hereto as **Exhibit "F"**, pp. 4-13 (Plaintiff's response to Hale's Request for Admissions Nos. 2-11[6]).

The Plaintiff's Responses to Request for Admissions are also dated May 2, 2016. Again, not only does the Plaintiff clearly not possess documents which demonstrate it was damaged by any of the Defendants' alleged actions contained in the verified Complaint, but Plaintiff also

---

[5] Despite this, Plaintiff again accused Hale of soliciting customers, clients and candidates while working for MedPartners. *See* D.E. 1, ¶44.

[6] Plaintiff's response was the same to Defendant's Request for Admissions that Plaintiff had no evidence to support its verified State Court Complaint allegations that Defendant Hale had divulged any of Plaintiff's trade secrets or confidential information, i.e., premature as discovery is ongoing. *See* Ex. F, pp. 18-19 (Plaintiff's Responses to Request for Admissions Nos. 16 & 17).

9

clearly cannot demonstrate that it has been damaged by Hale soliciting Plaintiff's current or potential clients, customers, candidates or employees – as this never occurred. Moreover, it is clear that the Plaintiff cannot demonstrate that Hale has divulged any of Plaintiff's Trade Secrets to MedPartners. Yet just two weeks later, the Plaintiff filed the verified Complaint alleging that the amount in controversy exceeds $75,000.

Even more compelling are Hale's verified answers to Plaintiff's Interrogatories in the State Court Action served on May 10, 2016 – just six days before the Complaint in this litigation was filed – wherein she stated, under oath, that (1) she has not solicited any of the Plaintiff's customers, clients, candidates or employees; and (2) she has not provided any documents or information which she obtained through her relationship with Plaintiff to MedPartners. *See* Hale's Verified Answers to Plaintiff's Interrogatories, attached as **Exhibit "G,"** pp. 7-9. (Nos. 4 & 5).

Moreover, MedPartners' verified interrogatory answers served in the State Court Action on May 10, 2016, state that it does not possess *any* of Plaintiff's documents, data, or other information. *See* MedPartners' Verified Answers to Interrogatories, attached hereto as **Exhibit "H,"** pp. 4-6. (Nos. 2 & 3).

Taken in totality, it is abundantly clear that, based on both the Plaintiff's discovery responses and the Defendants' discovery responses provided in the State Court Action, the Plaintiff has not suffered any damages, and if so, clearly not enough to justify a good faith belief that they exceed $75,000. "Although a diversity suit should not be dismissed unless it is apparent, to a legal certainty, that the plaintiff cannot recover [the requisite amount in controversy], this liberal standard for jurisdictional pleading is not a license for conjecture." *Morrison v. Allstate Indem. Co.*, 228 F. 3d 1255, 1268 (11th Cir. 2000) (Emphasis added). The

Plaintiff filed the Complaint just weeks after the discovery in the State Court Action was exchanged. The Plaintiff's allegation that the amount in controversy in this litigation exceeds $75,000 is nothing more than conjecture – which is prohibited by the *Morrison* court.

To sustain federal removal jurisdiction based on diversity of citizenship in a case in which the complaint filed in the state court seeks an unspecified amount of damages, it is the removing party's burden to prove by the preponderance of the evidence that the amount in controversy exceeds $75,000. *Golden v. Dodge-Markham Co.*, 1 F. Supp. 2d 1360, 1363 (M.D. Fla. 1998). Although this is not a removal case, the same analysis should be applied. The Plaintiff failed to demonstrate that it incurred any damages, let alone damages in excess of $75,000, in the State Court Action. The Plaintiff then dismissed the case and filed the almost identical verified Complaint in the above-styled litigation. In fact, the damages sought in the Complaint are the very damages that the discovery exchanged in the State Court Action have demonstrated simply do not exist.

Based on the allegations contained in the verified Complaint and the discovery exchanged in the State Court Action, it is clear that the amount in controversy in this litigation does not exceed $75,000. As a result, this Court lacks subject matter jurisdiction under 28 U.S.C. § 1332 to hear this action, and the Complaint must be dismissed with prejudice.

2. <u>Lack of Standing/Failure To Include An Indispensable Party (Counts III and IV)</u>

Counts III and IV of the Complaint should be dismissed because the Plaintiff has failed to include an indispensable party – Weatherby. As noted *infra,* Courts deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(7) perform a two-step inquiry: first they decide whether the absent party is required in the case under Fed. R. Civ. P. 19. If the person is a required party, then the court must then order that person to be made a party. If the person cannot join as a party, then

11

the court must consider if in equity and in good conscience whether the action should proceed among the existing parties or be dismissed. *Int'l Lmps., Inc.*, 2011 U.S. Dist. LEXIS 156203 at *6. "When making this decision, courts look at the pleadings and affidavits as well as evidence introduced by the parties. *Id.*

Count III of the Complaint alleges that Hale misappropriated Plaintiff's trade secrets in violation of the Florida Uniform Trade Secrets Act, Fla. Stat. § 688.001. *See* D.E. 1, ¶66. Count IV alleges that Hale is using the confidential information and Trade Secrets at MedPartners, resulting in irreparable harm to Plaintiff. *See* D.E. 1, ¶73. Without conceding that Hale misappropriated any alleged trade secrets, said alleged trade secrets belong to Weatherby, not to Plaintiff. Hale never worked for Plaintiff. *See* Ex. A, ¶2. From October, 2011 until January 8, 2016, she worked for Weatherby and supervised Weatherby employees. *See* D.E. 1, ¶¶ 23-24; *See* Ex. A, ¶¶2, 5-8. Plaintiff and Weatherby are separate and distinct legal entities, as Plaintiff is the parent corporation of Weatherby, which is located in Broward County, Florida. *See Id.*, ¶3. "It is well-settled that a parent corporation and its wholly owned subsidiary are separate and distinct legal entities." *Nat'l Union Fire Ins. Co. v. Tuco Integrated Sec., LLC*, 2015 U.S. Dist. LEXIS 82646, *81 (S.D. Fla. 2015) (citing *Am. Int'l Grp., Inc. v. Cornerstone Businesses, Inc.*, 872 So. 2d 333, 356 (Fla. 2d DCA 2004)). As a separate legal entity, a parent corporation cannot exercise the rights of its subsidiary. *Cornerstone Business, Inc.* 872 So. 2d at 356. Because Hale worked for Weatherby, and not its separate parent corporation (which is a separate and distinct legal entity), Plaintiff is not entitled to recover for any alleged misappropriation of Weatherby's trade secrets by Hale, as it lacks standing to recover for any such alleged misappropriations.

In *Check 'n Go of Va., Inc. v. Laserre*, 2005 U.S. Dist. LEXIS 16591 (W.D. Va. 2005), plaintiff, who was a payday lender, sued defendant, who was a competitor, and defendant's

employee, for tortuously interfering with the lender's contract and for misappropriation of trade secrets – specifically, a policy and procedure manual. The court found that the plaintiff, CNG-V, was not entitled to recover any damages because its parent holding company, CNG-Fin., was the corporation involved in the development costs for its manuals. *Id.* at *7. Likewise, it is only Weatherby – and *not* Plaintiff – which is the entity that can claim entitlement to the recovery of any damages under Count III of the Complaint, and injunctive relief under Count IV of the Complaint (as it relates to trade secret or confidential information). Hale worked for Weatherby and any alleged trade secrets or confidential information Plaintiff claims Hale is using or divulging belong to Weatherby. Just because Plaintiff is the parent company of Weatherby does not give it title to any of Weatherby's alleged trade secrets or confidential information that Hale has been accused of misappropriating. As such, because Weatherby is an indispensable party to Counts III and IV of the Complaint under Fed. R. Civ. P. 19, Count III and IV must be dismissed because Plaintiff lacks standing to pursue these actions and they cannot stand unless Weatherby is substituted in.[7]

    3. <u>Lack of Standing/Failure To Include An Indispensable Party (Count II)</u>

Count II (Breach of the Award Agreements) must be dismissed because the Plaintiff lacks standing to bring this action as it is not a party to either of the Award Agreements. As noted *infra,* Courts deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(7) perform a two-step inquiry: first they decide whether the absent party is required in the case under Fed. R. Civ. P. 19. If the person is a required party, then the court must then order that person to be made a

---

[7] As Weatherby is a Florida corporation and the Plaintiff has sought this Court's jurisdiction under 28 U.S.C. § 1332, the inclusion of Weatherby as a party in this litigation would destroy complete diversity, and this Court therefore would lack jurisdiction to hear the entire case. *See Palmer v. Hospital Auth.*, 22 F. 3d 1559 (11th Cir. 1994) ("Diversity jurisdiction, as a general rule, requires complete diversity – every plaintiff must be diverse from every defendant"); *see also* D.E. 1, ¶3; Ex. A, ¶2.

party. If the person cannot join as a party, then the court must consider if in equity and in good conscience whether the action should proceed among the existing parties or be dismissed. *Int'l Lmps., Inc.*, 2011 U.S. Dist. LEXIS 156203 at *6.

CHG Healthcare Holdings, L.P. and Hale are the only parties to the Award Agreements. *See* D.E. 1-3, Composite Exhibit B. In fact, the Plaintiff's name appears nowhere in the Award Agreements. The Plaintiff is not a party to the Award Agreements and therefore lacks standing to enforce a breach of the Award Agreements. "A rule of contract law is that one who is not a party to a contract cannot enforce its terms against one who is a party." *Lawson v. Life of the South Ins. Co.*, 648 F.3d 1166, 1167 (11th Cir. 2011). Therefore, because CHG Healthcare Holdings, L.P. is an indispensable party under Fed. R. Civ. P. 19, Count II must be dismissed.

4. Federal Unfair Competition (Count VI) Must Be Dismissed

Plaintiff's sixth count, Federal Unfair Competition, must be dismissed with prejudice. This Count is brought under 15 U.S.C. § 1125(a) (the "Lanham Act"), which states, in relevant part:

> (1) Any person who, or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which –
>
>> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>>
>> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualifies, or geographic origin of his or her or another person's goods, services or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

However, the Plaintiff has failed to identify any specific word, term, name, symbol, device, false designation of origin, or false or misleading fact that the Defendants have used

which would violate this Act.  In fact, the Plaintiff simply recites 15 U.S.C. § 1125(a) and in broad and general terms alleges that the "Trade Secrets and confidential and proprietary information" that Defendants allegedly possess constitutes a "false designation of origin or false representation."  *See* D.E. 1, ¶90.

The Lanham Act was enacted to address situations in which an individual uses a specific and identifiable mark, product or service to engage in unfair competition.  For example, in *Del Monte Fresh Produce Co. v. Dole Food Co.*, 136 F. Supp. 1271 (S.D. Fla. 2001), the plaintiff filed a four-count complaint against the defendants, including a Lanham Act and Florida Trade Secret violation.  As it relates to the Lanham Act count, the plaintiff alleged that, over the course of many years, it had developed a new variety of pineapple, and a Costa Rican farm unlawfully obtained this variety of pineapple from the plaintiff's Costa Rican plantations.  The defendant then purchased the pineapple from the Costa Rican farm and began selling it to compete with the plaintiff knowing that this variety of pineapple belonged exclusively to the plaintiff.  *Id.* at 1276.

In *SmokeEnders, Inc. v. Smoke No More, Inc.*, 1974 U.S. Dist. LEXIS 6183 (S.D. Fla. 1974), plaintiff filed a suit against defendants for, *inter alia*, violation of 15 U.S.C. § 1125 of the Lanham Act, for misappropriation of trade secrets, and for breach of confidentiality agreements.  The plaintiff had developed a smoking cessation program, which was reduced to writing and included a manual containing concepts and techniques essential to the program.  The defendants took the plaintiff's course and became trained moderators in the program.  They then developed a competing program using the plaintiff's copyrighted materials and inaccurately represented their relationship with the plaintiff.  Importantly, the plaintiff identified the specific document which was misappropriated and then used by the defendants – the program.  *Id.* at *22.  Additionally, the court found that the defendants had also copied or substantially copied all of

15

the outer dress of the plaintiff, including its advertising font, slogan, handouts provided to attendees, and kits provided to attendees. *Id.* at *23. The court held that based on this analysis, the defendants had violated the Lanham Act.

In *SmokeEnders*, just as in *Del Monte*, the plaintiffs brought claims under both the Lanham Act and the Florida Trade Secret Act. In both cases, there were specific, identifiable products and services which were identified as being misappropriated. However, the Complaint fails to identify a single product or service that the Defendants are allegedly using, because there are none, which is either (1) likely to cause confusion, mistake, or deceive as to its affiliation with the Plaintiff; or (2) is being used in commercial advertising or promotion and misrepresents the nature, characteristics, qualities, or origin of their goods, services or activities. In fact, as Count VI is currently plead, the Defendants have no idea what information they are being accused of using in violation of the Lanham Act, making it impossible to formulate a defense to this Count. As stated *infra*, "while a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels or conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S. Ct. at 1964–65. Likewise, Count VI is nothing more than a collection of legal conclusions and a formulaic recitation of 15 U.S.C. § 1125(a), and therefore it must be dismissed.[8]

5. <u>The Award Agreements Are Unenforceable</u>

Count II of the Complaint must also be dismissed with prejudice for lack of consideration because the Units (as defined in Exhibit B to the Complaint) never vested. As noted *infra*, the Award Agreements granted Hale Units which did not vest until February 12, 2016, Hale's first

---

[8] At a minimum, Plaintiff should be required to provide a more definite statement to include the necessary details to support Count VI.

anniversary with Weatherby after the Award Agreements were entered into on February 12, 2015. *See* D.E. 1-3, ¶(3)(c). Hale's employment relationship with the Plaintiff ended on January 8, 2016 – less than one year after the Award Agreements were entered into. *See* D.E. 1, ¶35. As such, the Units never vested, and the Award Agreements are therefore unenforceable due to lack of consideration.

## Conclusion

It is abundantly clear that the sole reason the Plaintiff has initiated this litigation is because it was unhappy with the proceedings in the state court and it desires a new court and judge to decide its claims. However, the Plaintiff's Lanham Act Count must be dismissed, therefore destroying federal question jurisdiction. And Plaintiff's cannot demonstrate that it has suffered more than $75,000 in damages and Weatherby, a Florida entity, must be joined as a party, destroying complete diversity. Further, the Units provided to Hale in the Award Agreement have not vested, and Plaintiff failed to include CHG Holdings, L.P. as an indispensable party to the Award Agreements Count. Consequently, the Complaint should be dismissed with prejudice for lack of subject matter jurisdiction or, in the alternative, because Plaintiff has failed to state a claim for which relief could be granted.

WHEREFORE, the Defendants respectfully request that this Honorable Court dismiss the Complaint with prejudice, and award the Defendants their attorney's fees and costs and all other relief this Court determines to be just and proper.

DATED this 27th day of May, 2016.

>Respectfully submitted,
>
>By: s/Chad K. Lang
>     Chad K. Lang, Esq.
>     Florida Bar No. 156922
>     E-mail: ckl@lgplaw.com

Case No. 0:16-CV-61038-WJZ

>Charles E. Stoecker
>Florida Bar No. 012005
>E-mail: ces@lgplaw.com
>LIEBLER GONZALEZ &
> PORTUONDO
>44 West Flagler Street
>Courthouse Tower, 25th Floor
>Miami, FL 33130
>Telephone: (305) 379-0400
>Facsimile: (305) 379-9626
>**ATTORNEYS FOR DEFENDANTS**

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 27, 2016, a true and correct copy of the foregoing was served via e-mail and U.S. Mail upon Jennifer A. Schwartz, Esq., & Samantha Dunton-Gallagher, Esq., Littler Mendelson, P.C., 333 S.E. 2nd Avenue, Suite 2700, Miami, FL 33131, E-mail: jschwartz@littler.com, sdunton@littler.com.

>/s/ Chad K. Lang
>Chad K. Lang, Esq.